Michael Perloff (D.C. Bar No. 1601047) (*pro hac vice* to be filed)
mperloff@acludc.org
Laura K. Follansbee (D.C. Bar No. 1782046) (*pro hac vice* to be filed)
lfollansbee@acludc.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF THE DISTRICT OF COLUMBIA
529 14th St NW, Ste 722
Washington, DC 20045
Telephone: (202) 457-0800

Jacob A. Snow (CA Bar No. 270988)
jsnow@aclunc.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE,<br><br>Plaintiff,<br><br>v.<br><br>MARKWAYNE MULLIN, *in his official capacity as Secretary of the Department of Homeland Security*<br><br>Defendant. | Case No. 3:26-cv-3988<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**(Violation of 19 U.S.C. § 1509)** |

**INTRODUCTION**

1.    Plaintiff John Doe enjoys participating in online discourse, posting extensively about politics on X and other social media platforms. At the same time, Mr. Doe is aware of the ways that speaking out on divisive issues can put a person at risk. To protect himself and his family from harassment, Mr. Doe posts under a pseudonym. This has given him greater comfort in criticizing a powerful public figure: the President of the United States. Mr. Doe strongly opposes President Trump's policies and has said so on multiple platforms, condemning the President's actions and those of his administration in posts that are passionate and even sometimes off-color but never contain threats or incite violence. Mr. Doe's posts collectively have received well over 100,000 views.

2.    This case arises from the United States government's attempt to compel the disclosure of vast swaths of information about Mr. Doe, including "[a]ll records and other information relating to the Account(s) and any associated accounts," such as his name, where he lives, extensive information about his physical movements, and detailed records about the websites he visits and the people he communicates with online. The Department of Homeland Security ("DHS") demanded this information in an administrative summons addressed to Google LLC (the "Summons"), a company with which Mr. Doe has personal email accounts. Google has not yet complied, but it has made clear that it cannot promise to hold out forever.

3.    DHS issued the Summons on its own—without any involvement from a court—purporting to rely on 19 U.S.C. § 1509. That statute concerns the government's ability to enforce customs laws and authorizes DHS to issue summonses to investigate violations of a limited set of statutes. This purpose cannot possibly have motivated DHS here. The Summons, which seeks "[a]ll records . . . relating to" Mr. Doe's Google accounts, goes well beyond what such an investigation could plausibly entail. Further, Mr. Doe has given DHS no basis to suspect that he violated any of the relevant statutes: He is a Canadian citizen who resides in Canada and who has not entered the U.S. since 2015. Moreover, even if the Summons were issued for a proper purpose, the scope of the records sought would still far exceed § 1509's limits on what officials can use it to acquire.

4.    Mr. Doe is not the first online critic whom the government has unlawfully targeted through compulsory process. During the first Trump administration, DHS's Inspector General concluded that DHS

officials improperly used § 1509 to unmask social media users, and Twitter filed a lawsuit challenging the practice. During the second Trump administration, several social media users have filed actions challenging administrative subpoenas seeking to reveal their identities and obtain other information about them. Perhaps recognizing the unlawfulness of their demands, DHS has withdrawn several subpoenas subjected to such challenges before a court could fully review them. Yet the Trump administration continues to attempt to unmask social media users who criticize the administration—a transparent gambit to chill speech that the government dislikes.

5.    Mr. Doe brings this action to obtain injunctive and declaratory relief that removes the threat of the Summons and affirms the limits on the government's § 1509 authority.

## JURISDICTION AND VENUE

6.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claim arises under laws of the United States.

7.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the acts complained of occurred in this District; namely, Google, the recipient of the Summons, resides in this District and would comply (or not comply) with it here.

## DIVISIONAL ASSIGNMENT

8.    The actions giving rise to this complaint occurred in Santa Clara County, where the recipient of the subpoena at issue in this case resides. This case is therefore properly assigned to the San Jose Division of the Northern District of California.

## PARTIES

9.    Plaintiff John Doe is a Canadian citizen and resident. He uses Google's Gmail service for email and is the target of the Summons.

10.    Defendant Mullin is the Secretary of the United States Department of Homeland Security. As Secretary, he oversees DHS along with its component agencies—of relevance here, U.S. Customs and Border Patrol and Immigration and Customs Enforcement—and the employees and agents who work for DHS, including the officials who issued the Summons, all of whom did so in the course of their employment. Secretary Mullin is sued in his official capacity.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF                    2                    Case No. 3:26-cv-3988

**FACTS**

11. Plaintiff John Doe uses Google's Gmail service for his email. He has Gmail accounts, which he uses for personal correspondence, including a Gmail account linked to his account with X.

12. Mr. Doe is a robust social media user, posting regularly on X and other platforms. He began posting under a pseudonymous username to avoid professional consequences, as his former employer expressed concerns about what employees say online. He continues to post under a pseudonym now to protect himself and his family from unwanted attention or harassment and so that he can freely express his views about current events.

13. Mr. Doe routinely posts and shares political content, particularly content critical of President Trump and his administration, including DHS and its employees.

14. For example, after ICE agents shot and killed protestor Renee Good on January 7, 2026, and Customs and Border Protection agents shot and killed protestor Alex Pretti on January 24, 2026, Mr. Doe took to social media to express his disapproval of the agents' conduct and the Trump administration's immigration policies.

15. Like many social media users, Mr. Doe frequently tags high ranking U.S. government officials in his posts and also comments on posts by those officials, practices that can result in the officials automatically receiving a notification informing them of Mr. Doe's comments.

16. Many of Mr. Doe's posts have received tens of thousands of views or more; collectively, his posts have received well over 100,000 views.

17. For example, Mr. Doe uploaded a post to X on January 30, 2026 that disparaged ICE and received nearly 96,000 views.

18. On February 4, 2026, DHS issued an administrative summons to Google containing three broad requests for information associated with the Gmail account Mr. Doe linked to his X account.

19. A true and accurate copy of the Summons—which Google sent to Mr. Doe on February 9 after redacting information identifying the officials who issued it—is attached as Ex. A.[1]

---

[1] The Summons Mr. Doe received from Google listed his email. The copy on file redacts that information to protect Mr. Doe's privacy—the very purpose of this case. Plaintiff will seek leave to file under seal a copy of the Summons, as provided by Google, without any additional redactions.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF                                3                      Case No. 3:26-cv-3988

20. The Summons states that it covers the period between September 1, 2025 and February 4, 2026.

21. The Summons's first information request demands that Google produce "[a]ll records and other information relating the Account(s) [which it identified by listing Mr. Doe's email address] and any associated accounts." This command "includ[ed]," among other things, any associated names, residential addresses, telephone numbers, and credit card numbers or bank account numbers.

22. Google has the capacity to collect all information sought under the first information request and often does.

23. The Summons's second information request (listed as topic 3) seeks "[a]ny location information" related to the account.

24. This phrase is undefined in the Summons, but Google's Privacy Policies make clear that the company keeps extensive "location information" about customers, using their IP address, among other means, to gather information about where customers are when using a Google product and, if certain settings are turned on, collecting similar information about customers even when their Google apps aren't open.

25. The Summons demands that Google produce "any" information of this sort associated with Mr. Doe's account over a five-month period. The Summons thus seeks records that could reveal a detailed picture of Mr. Doe's physical movements, identifying where he eats, sleeps, prays, or protests.

26. The Summons's third information request (listed as topic 4) seeks "all available activity, connection, and transactional logs, including user agent strings."

27. The Summons does not define any of these terms.

28. Google's policies state that the "activity" information it collects on its users may include, among other things, "[t]erms you search for," "[v]ideos you watch," "[v]iews and interactions with content and ads," "[v]oice and audio information," "[p]urchase activity," "[p]eople with whom you communicate or share content," "[a]ctivity on third-party sites and apps that use [Google's] services," and "Chrome browsing history you've synced with your Google Account."

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF                                  4                          Case No. 3:26-cv-3988

29. The Summons requires that Google produce "all available" information of this sort associated with Mr. Doe's account(s) over a five-month period. The Summons thus seeks records that would reveal vast swaths of Mr. Doe's online life.

30. The Summons was issued by a DHS official, not a judge.

31. The sole authority the Summons cites is 19 U.S.C. § 1509.

32. That statute authorizes the Secretary of DHS or a delegate of the Secretary not "below the rank of district director or special agent in charge" to issue summonses for "any investigation or inquiry conducted for the purpose of ascertaining the correctness of any entry [of merchandise], for determining the liability of any person for duty, fees and taxes due or duties, fees, and taxes which may be due the United States, for determining liability for fines and penalties, or for insuring compliance with the laws of the United States administered by the United States Customs Service." § 1509(a).

33. The Summons does not articulate any nexus between the information it requests and the investigations that § 1509 permits DHS to conduct.

34. Such a nexus does not exist.

35. The Summons seeks information far beyond what DHS could possibly need to conduct an investigation authorized by § 1509(a).

36. Mr. Doe did not commit any of the violations encompassed by § 1509(a).

37. Mr. Doe did not engage in any conduct that would give DHS any basis to suspect he violated any of the authorities encompassed by § 1509(a).

38. Mr. Doe is a Canadian citizen living in Canada.

39. He has not entered the United States since 2015.

40. Mr. Doe did not export anything to or import anything from the United States in the period covered by the Summons.

41. Mr. Doe's social media presence is focused on his moral and political commitments and current events.

42. The Summons contains a box that "if checked" would indicate that it pertains "to an investigation involving Child Exploitation and/or transmission of Child Pornography via the Internet." That box is not checked. Thus, the Summons was not issued in conjunction with such an investigation.

43.    Mr. Doe has never engaged in "Child Exploitation and/or transmission of Child Pornography."

44.    In addition to exceeding the scope of a permissible investigation under § 1509, compliance with the Summons would also violate the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2702–2703. The SCA generally bars providers of electronic communication services, such as Google, from voluntarily providing the government with records about their users. *Id.* § 2702. The Summons seeks categories of information—such as location information, online "activity" information, "connection" and "transaction logs," and "[a]ll records and other information relating the Account"—that the government cannot obtain through an administrative subpoena alone. *See id.* § 2703. The Summons (which is a form of administrative subpoena) therefore violates the SCA.

45.    Mr. Doe first learned of the Summons on February 9. That day, Google emailed the Gmail account identified in the Summons and stated that it had "received an administrative subpoena issued by the Department of Homeland Security compelling the release of information related to your Google account." Google attached the Summons to the email (redacting identifying information about the issuing officials) and requested that Mr. Doe reply within fourteen days if he wished to object.

46.    On February 16, 2026, Mr. Doe responded to Google, objecting to the summons.

47.    On February 23, 2026, Mr. Doe wrote again, asking that Google confirm receipt of his earlier objection.

48.    This is not the first time that DHS has asserted authority it lacks in an attempt to unmask an anonymous social media critic.

49.    In November 2017, the DHS Inspector General issued a report finding that Customs and Border Patrol improperly issued summonses under § 1509.

50.    The Inspector General completed its investigation in response to a 2017 lawsuit filed by Twitter (now X) challenging a § 1509 summons from DHS seeking to unmask a Twitter user who criticized DHS activities.

51.    During the second Trump administration, DHS has issued these unfounded administrative summonses to technology companies with increasing frequency, targeting social media users who oppose the President's immigration policies.

52.    Reddit, for example, publicly reported that it received the largest influx of law enforcement requests for user information in its history between January and June 2025.[2] Sixty-six percent of those requests were from law enforcement agencies in the U.S.[3]  In February 2026, the New York Times reported that "[i]n recent months, Google, Reddit, Discord and Meta, which owns Facebook and Instagram, have received hundreds of administrative subpoenas from the Department of Homeland Security."[4]

53.    The administration has sought to rifle through the digital activities of a community support group,[5] anonymous advocates,[6] and a retiree,[7] for no apparent reason other than their objections to ICE raids and deportations.

54.    When recipients or subjects of the compulsory process moved to quash or otherwise challenged the summons in court, DHS has often withdrawn its demand, thereby short-circuiting judicial review.[8]

---

[2] Ryan Devereaux, *A Redditor Criticized ICE. Trump Is Trying To Unmask Them by Dragging the Company to a Secret Grand Jury*, The Intercept (Apr. 10, 2026), https://theintercept.com/2026/04/10/reddit-ice-protest-grand-jury/

[3] *Id.*

[4] Sheera Frenkel & Mike Isaac, *Homeland Security Wants Social Media Sites To Expose Anti-ICE Accounts*, N.Y. Times (Feb. 13, 2026), https://www.nytimes.com/2026/02/13/technology/dhs-anti-ice-social-media.html; Alfred Ng, *Judge Tells Meta Not To Share Instagram Users' Information with Trump Admin*, Politico (Sept. 19, 2025), https://www.politico.com/news/2025/09/19/judge-tells-meta-not-to-share-instagram-users-information-with-dhs-00574094.

[5] Chris Palmer, Jeff Gammage, *A Federal Judge Blocked Facebook From Giving Information to DHS About Montco Activists Who Track ICE on Social Media*, The Philadelphia Inquirer (Oct. 17, 2025), https://www.inquirer.com/politics/ice-montco-watch-facebook-immigration-aclu-20251017.html.

[6] Frenkel & Isaac, *supra* n. 4.

[7] John Woodrow Cox, *Homeland Security Is Targeting Americans with This Secretive Legal Weapon*, Wa. Po. (Feb. 3, 2026), https://www.washingtonpost.com/investigations/2026/02/03/homeland-security-administrative-subpoena/.

[8] *See* Frenkel & Isaac, *supra* n. 4; Camila Domonoske, *Twitter Withdraws Lawsuit After DHS Drops Demands for Alt-Account's Identity*, NPR (Apr. 7, 2017), https://www.npr.org/sections/thetwo-way/2017/04/07/523022497/twitter-withdraws-lawsuit-after-dhs-drops-demands-for-alt-accounts-identity; Press Release, ACLU, *Department of Homeland Security Withdraws Subpoena Targeting Man Who Criticized Them* (Feb. 10, 2026), https://www.aclu.org/press-releases/department-of-homeland-security-withdraws-subpoena-targeting-man-who-criticized-them#:~:text=SAN%20FRANCISCO%20%E2%80%93%20In%20a%20win,of%20common%20sense%20and%20decency%E2%80%9D.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF                                    7                        Case No. 3:26-cv-3988

## CLAIM FOR RELIEF

### Violation of 19 U.S.C. § 1509

55.    Executive Branch officials and agencies only have those powers conferred upon them by the Constitution and federal statutes.

56.    Federal courts have inherent authority to grant equitable remedies in response to actions by federal officials that violate federal law. *See Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015).

57.    The Summons violates § 1509, the authority DHS invoked to issue it. That statute allows DHS to compel productions only pursuant to investigations of certain offenses. The Summons could not possibly have issued for the purpose of investigating those offenses, as it seeks more—and different—information than DHS could plausibly need for such inquiries and targets an individual for whom DHS has no basis to suspect of committing a relevant offense.

58.    Even if the Summons served a proper purpose, it would remain unlawful because it demands records that § 1509 does not allow it to obtain. The requests here are neither relevant nor material to the investigations authorized by the statute. Further, Section 1509(a)(2) allows the DHS Secretary or his delegate to "summon" any individual "to produce records, as defined in subsection (d)(1)(A)." Section 1509(d)(1)(A), in turn, defines the "records" DHS can seek as (1) material that is "required to be kept under section 1508 of this title" or (2) material for which DHS has "probable cause to believe . . . pertain to merchandise the importation of which into the United States is prohibited." The information sought here does not fall under § 1508, as that section covers a narrow set of records related to importing and exporting goods. Nor could DHS have probable cause to believe the records at issue pertain to unlawful merchandise imports, as Mr. Doe made no imports to or exports from the U.S. during the period that the Summons covers.

59.    Accordingly, the Summons exceeds the authority conveyed to DHS by statute and is therefore unlawful.

60.    Absent relief, Plaintiff faces a substantial risk of experiencing irreparable harm arising from the disclosure of highly sensitive information regarding his physical and digital life.

## REQUESTED RELIEF

Wherefore, Mr. Doe respectfully requests that the Court:

A.    RULE that the Summons exceeds Defendant's authority under 19 U.S.C. § 1509;

B.    ENJOIN Defendant from seeking, or authorizing his agents to seek, to enforce the Summons or any other form of similar compulsory process targeting Mr. Doe;

C.    AWARD Mr. Doe his costs and reasonable attorneys fees pursuant to 28 U.S.C. § 2412, and any other applicable source of law; and

D.    GRANT such further relief as the Court deems proper and appropriate.

Dated: May 4, 2026                              Respectfully submitted,

                                                */s/ Jacob A. Snow*
                                                Jacob A. Snow (SBN 270988)
                                                AMERICAN CIVIL LIBERTIES UNION
                                                FOUNDATION OF NORTHERN CALIFORNIA

                                                Michael Perloff (D.C. Bar No. 1601047)
                                                Laura K. Follansbee (D.C. Bar No. 1782046)
                                                AMERICAN CIVIL LIBERTIES UNION FOUNDATION
                                                OF THE DISTRICT OF COLUMBIA

                                                *Attorneys for Plaintiff*